HENCH ET AL. *v.* EACOCK, TRUSTEE.

[No. 2,637. Filed Nov. 30, 1898. Rehearing denied Jan. 24, 1899.]

SALES.— *Vendor and Purchaser.— Conditional Sales.*—A wholesale dealer sold certain articles of personal property for the purpose of resale, conditioned that the title thereof should remain in the vendor until the property was paid for, the purchaser having the privilege of selling the same at retail in the ordinary course of business; partial payments were made on the goods so purchased and credited to the general account. *Held*, that a sale of the property in bulk by the purchaser in satisfaction of a pre-existing indebtedness was not a sale within the meaning of the contract of purchase, and conferred no title upon the purchaser.

From the Tippecanoe Circuit Court. *Reversed.*

*Haywood & Burnett*, for appellants.

*John F. McHugh*, for appellee.

ROBINSON, J.—Appellants brought suit in replevin to recover the possession of certain personal property of the value of $750. A trial resulted in a judgment in appellee's favor. The only error assigned is overruling appellants' motion for a new trial. A new trial was asked on the grounds that the decision was contrary to law, and was not sustained by sufficient evidence. The property in dispute was sold by appellants to the M. E. Sears Implement Company. Certain mortgagees of the M. E. Sears Company purchased the company's property for $13,600, and included in it was the property in dispute. The above amount was the amount due on the mortgages, and, when purchased by the mortgagees, the mortgages and notes were surrendered. The mortgagees took possession and put appellee in possession of the same as their trustee.

It is argued by counsel for appellee that appellants failed to show that they had title to the property in question. It appears from the evidence that, by the one contract of sale, appellants sold the Sears Implement Company twenty-five fifteen-tooth lever harrows, 200 seventeen-tooth harrows, twelve six-tooth cultivators, and 100 seats. The property sought to be recovered in this action is a part of the above, and consists of fifty seventeen-tooth harrows and ten fifteen-tooth harrows. Mr. Bryant testified that he was a member and stockholder of the Sears Implement Company, and that he purchased the property in controversy from appellants' agent; that the goods were purchased for the purpose of resale; that there was about $1,400 yet due on the contract; that the particular property in suit was sold to the mortgagees; that most of the harrows in question were received in January and March; most of them were received in January, in the first shipment; payments were made along during January, February, March, April, May, and June, 1896.

Mr. Dromgold, one of the appellants, testified that appellants had never received pay for the property in suit; that one general account was kept for the whole bill of goods, and that when payments were made the account was credited with the amount received; that all the money due on the contract had been paid except $1,400; that, when payments were made by the Sears Company, they were not applied to any particular part of the property, but were applied as a credit to the entire account. It is not denied that the property in suit is a part of the property purchased under the contract of sale, the title to which was to remain in the vendor until paid for. Taking all the evidence together, we think it shows title to the property in question in appellants.

The property in controversy was sold by appellants to the M. E. Sears Company under a written contract, which is set out in the record. The agreement between the parties was a conditional sale, as appears from the language of the contract, which, among other things, provides, "that the title and ownership of the goods, of whatever kind, that may be shipped as hereinafter provided, shall remain in, and their proceeds in case of sale shall be the property of Hench & Dromgold and subject to their order, until full payment shall have been made of the same by the undersigned, to the acceptance of Hench & Dromgold; but nothing in this clause to release the undersigned from making payment as aforesaid. All cash or notes received from the sale of the herein or hereafter ordered goods must be forwarded to Hench & Drumgold immediately when received. All notes and accounts must be guaranteed by the undersigned. It is understood that all notes given under this contract are not accepted as payment for the goods but simply an acknowledgment of the debt."

That there may be a legal and valid conditional sale of personal property has often been recognized by the courts of this State. In such cases there must be a plain and express stipulation to that effect, for the reason that the vendee has been clothed with all the *indicia* of ownership and is apparently the owner. In the case at bar that portion of the contract above set out makes a sale thereunder a conditional sale, unless some other portion of the contract neutralizes that provision. Another clause of the contract of sale reads as follows: "To handle no other make of goods of the same class herein ordered, nor any part of Hench & Dromgold's goods except those furnished by Hench & Dromgold, during the time this contract is in force, and to sell the hereinafter named goods at retail and in the ordinary course of business only in the territory hereinafter mentioned. It is mutually agreed that this contract is intended to cover the sale and to give territory privileges for only the styles of goods specified, specifically ordered in the following lists at date of this contract, and for no other." Counsel for appellee cite and rely upon the case of *Winchester, etc., Co.* v. *Carman,* 109 Ind. 31. In that case the court recognizes the doctrine of conditional sales of personal property, and says: "But where, as here, it appears that a manufacturer and wholesale vendor of articles of personal property sells upon credit, and delivers a lot of such articles to a retail dealer therein, for the apparent or implied purpose of resale by such vendee, it is clear, we think, that the doctrine in relation to conditional sales cannot apply to or govern such a sale, in a controversy as to such articles between the original vendor and the purchasers thereof from the original vendee. For, in such a case, the purpose for which the possession of the property was delivered to the original vendee are inconsistent with the continued

ownership thereof by the original vendor, and for this reason the condition upon which the sale and delivery were made, must be deemed fraudulent and void as against purchasers from the original vendee of the property."

Recognizing the rule as above declared, we cannot say that it is controlling in the case at bar, unless we extend its application, and this we cannot do. We cannot say that purchasing property in bulk under a chattel mortgage given to secure a pre-existing debt is a sale of such property "at retail and in the ordinary course of business,"—the manner in which the contract provides the property may be sold. Under the authority of the above case, the reservation of title in appellants would be fraudulent and void as to the purchasers from the vendee at retail and in the ordinary course of business. But the facts in the case at bar do not bring the case within the rule. It is conceded that the notes, to secure which the mortgages were given, represented pre-existing indebtedness. We know of no authority extending the doctrine declared in the Carman case. In *Steele* v. *Aspy, Adm.*, 128 Ind. 367, the court said: "In the case of *Winchester, etc., Co.* v. *Carman,* it was held that where a sale of goods was made to one who, as in this case, was to retail them, an express stipulation that the sale was conditional, and the title should not pass until the goods were paid for, was void as to creditors of the vendee." In the case of *Pratt* v. *Burhans,* 84 Mich. 487, 22 Am. St. R. 703, 47 N. W. 1064, appellant agreed to sell and deliver a firm certain goods; title to be retained in seller until paid for or sold. Appellee had indorsed for said firm for a large sum. Appellant shipped the goods to the firm and, shortly after, the firm turned over all their stock, including the goods furnished by appellant, to appellee and gave him a bill of sale thereof, which

appellee claimed was a *bona fide* purchase in consideration of his indorsements. In the opinion in that case, the court said: "The defendant did not buy them in the due course of trade; and therefore, if such a contract was made, the plaintiffs were entitled to recover. Such a contract is valid under the repeated decisions of this court, and we are not concerned with the decisions of other courts upon the subject. Those who purchased in the usual course of trade would take a good title. Those who did not purchase in the usual course of trade could not rely upon the bare possession of their vendor as conclusive evidence of title." See *Burbank* v. *Crooker*, 7 Gray, 158, 66 Am. Dec. 470; *Standard, etc., Co.* v. *Parlin, etc., Co.*, 51 Kan. 544, 33 Pac. 306; Benjamin on Sales (1st Am. ed.), 271 *et seq.*

Appellee, representing the mortgagees, can have no better title than the vendee under the original contract of sale. And while he could have sold the goods at retail and in the ordinary course of business, and have given such a purchaser a good title as against the original vendor, yet he had no power to devest the original vendor's title by a sale of the property in bulk to mortgagees in satisfaction of pre-existing indebtedness. The motion for a new trial should have been sustained. Judgment reversed.