## LETT *v.* EASTERN MOLINE PLOW COMPANY.

[No. 6,830. Filed May 24, 1910.]

1. SALES.—*Retention of Title.*—*Wholesalers.*—*Retailers.*—A wholesaler who sells goods to a retailer, retaining title thereto so long as anything shall be unpaid thereon, does not impliedly authorize a sale thereof in bulk by such retailer to another, so as to pass the title thereto. p. 57.

2. APPEAL.— *Weighing Evidence.*— *Verdict.*— Where there was a conflict in the evidence on an issue, the verdict returned is conclusive on appeal. p. 59.

3. SALES.—*Manufacturers.*—*Retailers.*—*Retention of Title.*—*Third Persons.*—A manufacturer who retains title to goods furnished to a retailer to be sold in the usual manner, impliedly authorizes the conveyance of an absolute title to the retail purchaser. p. 63.

4. SALES.—*Title.*—Ordinarily, a vendor can pass no greater title to goods than that which he possesses. p. 63.

5. SALES.— *Retention of Title.*— *Wholesalers.*— *Retailers.*— A contract by which a wholesaler retains title to goods furnished to a retailer to be sold in the usual manner is valid. p. 63.

6. SALES.—*Contracts.*—*Retention of Title.*— *Wholesalers.*— *Retailers.*—A contract providing that the wholesale vendor shall retain title to the goods sold to a retailer, and that if such retailer "sells out," all notes and accounts given for such goods shall become due and payable, does not authorize such retailer to sell the whole stock to another retailer and to pass the title thereto. p. 63.

7.—TRIAL.—*"Instructions."*—*What Are.*—*Directions as to Answering Interrogatories.*—Directions to a jury as to the answering of interrogatories do not constitute "instructions" within the meaning of the law. p. 64.

8. TRIAL.—*Interrogatories.*—*Objections to Submission of.*—Objections to the submission of interrogatories must be made prior to the submission thereof. p. 65.

From Carroll Circuit Court; *James P. Wason,* Judge.

Action by the Eastern Moline Plow Company against Lewis S. Lett. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*Charles R. Pollard* and *John H. Gould,* for appellant.
*H. J. Brandon,* for appellee.

MYERS, J.—Appellee brought this action against appellant to recover the possession of certain personal property, consisting of buggies, wagons and farm implements.

The complaint was in one paragraph, answered by a general denial. A trial by a jury resulted in a judgment in favor of appellee for certain named articles of said property, valued at $800, and in favor of appellant for the remainder of the property in dispute, valued at $412.

Appellant's motion for a new trial was overruled, and this ruling is the only alleged error relied on for a reversal of the judgment.

Appellant first contends that the verdict is not supported by sufficient evidence. It appears from the evidence that the firm of Ramey & Gardner, from September 18, 1905, until July 12, 1906, at Cutler, Indiana, was engaged in selling at retail and in the usual course of trade, among other goods, buggies, wagons and farm implements; that the goods in controversy were sold by appellee to said firm upon a contract in writing, wherein it was provided that

"the second parties agree that the title to and ownership of all goods shipped under this contract, or the proceeds of the sale thereof, shall remain in the party of the first part [appellee], and shall be subject to its order at any time said first party may feel itself insecure, or until full payment shall have been made by second party for said goods or said notes, and until any judgment rendered therefor or thereon is paid in full. If the purchaser under this contract sells out, fails, be-

comes insolvent or dies, or if any member of the purchaser's firm fails, sells out, becomes insolvent or dies, all accounts or notes for goods bought under this contract, including renewal notes, in whose hands soever said notes may be, shall then become due and payable, whether the notes be given in payment for goods or accounts or collateral thereon. This contract is of a continuing nature and shall cover all goods ordered during the season.''

It was also provided

''that upon receipt of goods, or upon monthly balances at the option of the second party, said party of the second part will execute notes to said party of the first part for the amount to be paid for the goods so received, according to the terms of this contract; and all goods ordered hereafter for this season's trade will be subject to the same conditions as to time and manner of payment as those now herein ordered.''

On July 12, 1906, appellant purchased from said firm, paid for and took possession of, said stock of goods, and kept possession thereof until December 29, 1906, when at the instance of appellee the goods described in the complaint were taken by the sheriff. The possession of the goods, so taken by the sheriff, was demanded by appellee from appellant on December 4, 1906. Prior to the purchase by appellant of the goods so demanded and taken by the sheriff, said firm had fully paid for a portion thereof in cash, and for the remainder of the goods said firm had executed to appellee five promissory notes. Two of said notes became due on October 1, 1906, one on December 1, 1906, one on July 1, 1907, and one on October 1, 1907.

Appellee at the time it sold said property to said firm was engaged in manufacturing and selling articles of personal property of the character in question at wholesale to retailers only. There was sharp conflict in the evidence as to whether appellant, at the time he purchased the goods in question, had knowledge of the contract for said goods relied on by appellee. Looking to the evidence and the verdict, it would

seem that the jury gave to appellee the articles mentioned in the complaint, for which it had not received payment.

From the statement made, it is apparent that the real question in this case involved the right of appellee to follow the goods into the hands of a third person, who purchased them in bulk, and for the purpose of retailing in the usual course of trade.

The jury's settlement of facts, about which there was conflict in the evidence, is conclusive upon this court, and as to all such questions we must assume that such settlement was most favorable to the general verdict. Assuming that appellant did have knowledge of the terms of said contract and of the existing indebtedness from his vendors to appellee, there could be in fact no claim of fraud or deception practiced upon him, whereby he was induced to do something to his damage he would not otherwise have done.

That a conditional sale, as here, was valid and enforceable, as between the parties thereto, is not questioned. But it is contended that a contract whereby title to personal property is retained by the vendor until paid for, as between a wholesaler and retailer, is not only void as to those who may purchase from such retailer in the ordinary course of trade, and also as to a trustee of the original vendee in case the latter becomes a bankrupt, but void as to third persons purchasing such goods in bulk from the original vendee. Appellant, in support of its contention, cites *Winchester Wagon Works, etc., Co.* v. *Carman* (1887), 109 Ind. 31, 58 Am. Rep. 382; *Hench* v. *Eacock* (1899), 21 Ind. App. 444; *West* v. *Fulling* (1905), 36 Ind. App. 617; *Murch* v. *Wright* (1868), 46 Ill. 487, 95 Am. Dec. 455.

In the first case cited, the Winchester Wagon Works and Manufacturing Company, a manufacturer and wholesaler of wagons, sold to one of its customers, a retail dealer, a carload of wagons, on condition that the title to the wagons should remain in the vendor until the price therefor had

been fully paid. The original vendee sold and delivered two of the wagons to a third party, who in turn resold them to Carman. The Winchester Wagon Works and Manufacturing Company not having received pay for said two wagons brought suit against Carman for possession of them. Held, that the title to the two wagons vested absolutely in the original vendee. In that case it was said: "But where, as here, it appears that a manufacturer and wholesale vendor of articles of personal property sells upon credit, and delivers a lot of such articles to a retail dealer therein, for the apparent or implied purpose of resale by such vendee, it is clear, we think, that the doctrine in relation to conditional sale cannot apply to or govern such a sale, in a controversy as to such articles between the original vendor and the purchasers thereof from the original vendee. For, in such cases, the purposes for which the possession of the property was delivered to the original vendee are inconsistent with the continued ownership thereof by the original vendor, and for this reason the condition, upon which the sale and delivery were made, must be deemed fraudulent and void as against purchasers from the original vendee of the property."

The law as thus announced by the court must be considered and applied in view of the facts then under consideration, and to that extent it is controlling. If it appears to be broader than the facts would warrant, it must to that extent be considered as advisory only. That the court announced a rule applicable to persons buying at retail from the original vendee is evident from the fact that it expressly limited the rule to cases like the one before it, and as indicated by the words "purchasers from the original vendee." No facts appear in that case showing that the original vendee did not sell the wagons in question in the usual course of trade, nor that the case was without the rule promulgated by the court applicable to purchasers from an original vendee at retail in the usual course of business.

In the case of *Hench* v. *Eacock, supra,* this court considered the ruling declared in *Winchester Wagon Works, etc., Co.* v. *Carman, supra,* and decided not to extend its application so as to relieve the party (second retailer) purchasing the property in bulk from the terms of a conditional sale contract. True the contract then being considered expressly stipulated for the sale of the "goods at retail and in the ordinary course of business only." The conditional sale contract in the case at bar does not in so many words restrict the original vendee to a sale of the goods at retail, but it is clear from the position occupied by the parties, and the facts and circumstances surrounding them at the time the original sale was made, that a resale at retail in the ordinary course of trade was all that was intended, and we may assume that the jury so found as a fact. In the case of *Hench* v. *Eacock, supra,* the following is quoted from *Pratt* v. *Burhans* (1891), 84 Mich. 487, 47 N. W. 1064, 22 Am. St. 703: "Those who purchase in the usual course of trade would take a good title. Those who did not purchase in the usual course of trade could not rely upon the bare possession of their vendor as conclusive evidence of title." And this court said in the same case: "Appellee, representing the mortgagees, can have no better title than the vendee under the original contract of sale. And while he could have sold the goods at retail and in the ordinary course of business, and have given such a purchaser a good title as against the original vendor, yet he had no power to devest the original vendor's title by a sale of the property in bulk to mortgagees in satisfaction of preëxisting indebtedness."

The case of *West* v. *Fulling, supra,* was brought by the vendor against a trustee of the original vendee, a bankrupt, involving the conditional sale of a stock of goods. Held, that the conditional sale as between the vendor and vendee was neither fraudulent nor void, but that it was invalid as against creditors, the proof bringing the case within the pro-

visions of the bankruptcy act, which prohibits a preference and confers upon a trustee in bankruptcy the right to recover for such preference. Section seventy of the bankruptcy act (30 Stat. 565) declares in express terms that the trustee of a bankrupt shall take the title to all ''property which prior to the filing of the petition *he could by any means have transferred* or which might have been levied upon and sold under judicial process against him.'' (Our italics.) The stock of goods might have been sold, and in the usual course of trade transferred; and, this being true, the bankruptcy act stepped in and vested the title to the goods in the trustee for the benefit of the bankrupt's creditors. Any statement in the opinion which may be construed as holding such contracts fraudulent and void, except as to purchasers at retail and trustees in bankruptcy, must be regarded as *obiter dicta.* *In re Garcewich* (1902), 115 Fed. 87, 53 C. C. A. 510.

In the case of *Murch* v. *Wright, supra,* the question presented called for a construction of a certain written agreement, which was made to assume the form of a lease on a piano. The agreement was held to be ''a conditional sale, with a right of rescission on the part of the vendor, in case the purchaser should fail in the payment of his instalments —a contract legal and valid as between the parties, but made with the risk, on the part of the vendor, of losing his lien, in case the property should be levied upon by creditors of the purchaser while in possession of the latter. That has happened in this instance, and the lien relied upon by appellant is unavailing as against a creditor.'' It will be seen that by the express terms of the agreement in that case, the vendor, upon the happening of a certain event, was to lose his lien. The event happened and the vendor was devested of his lien. That case has no application to this case.

In the present case there is no question involving the rights of creditors, and no question affecting the rights of

purchasers in the usual and ordinary course of trade.

3. In the first instance, the law acts upon the contract for the benefit of creditors, and in the latter condition, the purchaser's title could not be impeached, for the reason that the retailer has done no more than his vendor has either expressly or impliedly authorized him to do. But in this case, as we read the agreement between appellee and its vendee, the disposition of the goods by the latter to appellant was not in the manner contemplated by the parties or consistent with the business as carried on by appellant's vendors. The rule is elementary, that a vendor can

4. vest no better title in his vendee than that possessed by himself. *Sears* v. *Shrout* (1900), 24 Ind. App. 313. Combining this rule with the general rule applicable to conditional sales, that no property passes until a compliance with the condition, and applying these rules to the facts in hand, "we see no legal objection to a wholesale deal-

5. er's making a conditional sale to a retailer with the understanding that he may dispose of the goods as they may be called for at retail, but that as between themselves the property shall not pass until the goods are paid for; and in such case while the purchaser at retail would get a title which the original vendor could not impeach because of his agreement with the retailer, it would be the title of the original vendor and not that of the retailer who has none and can convey none except in the manner which his arrangement with the vendor permits. One to whom he sells his whole stock will take no title." *Rogers* v. *Whitehouse* (1880), 71 Me. 222.

Appellant insists that the agreement between the appellee and his vendors provided for a sale of the goods in bulk, and in support of this insistence calls our attention to the

6. clause "if the purchaser under this contract sells out," etc. If the clause in question could be so construed, appellant's position would be well-grounded, but as

we construe that part of the contract, it affects and has reference only to the unmatured notes and accounts. That is to say, upon the happening of any of the events therein named, all unmatured notes or accounts for goods bought under the contract shall then become due and payable. We can attach no other significance to this clause of the contract.

Appellant, in support of his motion for a new trial, questions the action of the court in orally instructing the jury as to its duty in answering interrogatories. It appears

7. from the record that two sets of interrogatories, one prepared by plaintiff and the other by defendant, were submitted to the jury to be answered. As submitted, they were not so designated. After the case had gone to the jury, and during its deliberations, at its request, it was brought into open court. The foreman then stated to the court that there were "two separate sets of interrogatories submitted, one prepared by plaintiff and the other by defendant," and inquired of the court if each set was to be answered, whereupon the court orally instructed the jury as follows: "The court instructs you that it is the duty of the jury to answer each interrogatory fully under the evidence, and each interrogatory, when answered, should be signed by your foreman, and returned into open court with your general verdict, when you agree upon a verdict in this case."

It is admitted that the court had been requested to instruct the jury in writing. Instructions to the jury, within the meaning of the statute, have reference to the law bearing upon the merits of the controversy. But a direction to the jury as to its duties, not involving any principle of law affecting the merits of the case, cannot be regarded as an instruction required to be in writing under the act of March 9, 1903 (Acts 1903 p. 338). *Hatfield* v. *Chenowith* (1900), 24 Ind. App. 343; *Indianapolis, etc., Traction Co.* v. *Henderson* (1906), 39 Ind. App. 324; *Bradway* v. *Waddell* (1884), 95 Ind. 170; *Peelle* v. *State* (1903), 161 Ind. 378.

Appellant also argues that the court erred in submitting

interrogatories to the jury in such form as the jury might know by whom they were prepared. From an examination of the record, it does not expressly appear, as we have said, by whom the interrogatories were prepared or requested. The order-book entry submitting the interrogatories shows that the jury was required to answer certain interrogatories, one set numbered from one to sixteen, inclusive, and another set numbered from one to nineteen, inclusive. At the time of the submission of said interrogatories to the jury no objection was made by the appellant or exception taken. It does appear that some time after the submission of the cause to the jury, and while it was engaged in making up the verdict, it came into open court and inquired of the court whether it should answer both sets of interrogatories, and not until that time did appellant object and except to the form in which the interrogatories were submitted. The objection and exception came too late. If appellant desired to reserve an exception to the form in which such interrogatories went to the jury, it was his duty to do so at the time of their submission. §656 Burns 1908, §626 R. S. 1881; *Matsinger* v. *Fort* (1889), 118 Ind. 107; *Wabash R. Co.* v. *Dykeman* (1892), 133 Ind. 56, 63; *Radabaugh* v. *Silvers* (1893), 135 Ind. 605; *Booker* v. *Killion* (1902), 29 Ind. App. 196.

Appellant's objections are not sustained, and the judgment is therefore affirmed.